IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYDIA REBECCA GASKIN,
et al.,

                Plaintiffs

                v.

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA DEPARTMENT OF
EDUCATION, et al.,

                Defendants

:
:
: NO. 94-CV-4048
:
: (JUDGE ROBRENO)
:
:
:
:
:
:
:

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

---

D. MICHAEL FISHER
**Attorney General**

By:    **GWENDOLYN   T.   MOSLEY**
**Senior Deputy Attorney General**
**I.D. No. 29157**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**OFFICE OF ATTORNEY GENERAL**
Civil Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 787-1179
FAX: (717) 772-4526

DATE: September 26, 2003

                **Counsel for Defendants**

## TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

I.  THE INDIVIDUAL PLAINTIFFS ARE NOT ENTITLED TO
     SUMMARY JUDGMENT ON ANY OF THEIR CLAIMS . . . . . . . . . . . . . . . .  2

    A.  The Claims of Plaintiffs Merrin Rainey, John Forte
     and Michael Wintering Are Moot  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    B.  Plaintiff Tiffany Zimenoff's Move From Pennsylvania
     Deprived Defendants From Responsibility For Her
     Education Under The IDEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    C.  Because John Forte, Samuel Luckenbill, Sarah Noe,
     Hassan Sabree And Tiffany Zimenoff
     Are Over The Age Of 21, They Have No Right To
     Seek Injunctive Relief Under The IDEA . . . . . . . . . . . . . . . . . . . . . . .  5

    D.  Plaintiffs Samuel Luckenbill, Sarah Noe And
     Hassan Sabree Have Not Shown That They Are
     Entitled To Compensatory Education  . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    E.  Plaintiffs Anne Corr, Lydia Gaskin, Brett Koneski,
     Lisa McCann And Elizabeth Moser Are Not
     Entitled To Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

    F.  Plaintiffs Have Not Demonstrated Their
     Entitlement To Relief Under Section  . . . . . . . . . . . . . . . . . . . . . . . . .  14

    G.  Plaintiffs Have Not Demonstrated That They Are
     Entitled To Relief Under The ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.  PLAINTIFFS ARE NOT ENTITLED TO CLASS-WIDE RELIEF . . . . . . . . .  16

    A.  The Survey Data Is Inadmissible Under
     Rule 702 And *Daubert* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

      B.    There Is No Proof That The Class Suffered
           Actual Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Board of Education of E. Windsor Regional School District*
    *v. Diamond,* 808 F.2d 987 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*County of Los Angeles v. Davis,* 440 U.S. 625 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Flast v. Cohen,* 392 U.S. 83 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fort Zumwalt v. Clynes,* 199 F.3d 607 (8th Cir. 1997),
    *cert. denied,* 523 U.S. 1137 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gadsby by Gadsby v. Grasmick,* 109 F.3d 940 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . 4

*Harrow v. Prudential Insurance Company of America,*
    279 F.3d 244 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . 18

*Lester H. Gilhool,* 916 F.2d 865, 872 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lewis v. Casey,* 518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Missouri v. Jenkins,* 515 U.S. 70 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Nathanson v. Medical College of Pennsylvania,*
    926 F.2d 1368 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oddi v. Ford Motor Company* 234 F.3d 136 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 20, 21

*Paoli Railroad Yard PCB Litigation,* 35 F.3d 717
    (3d Cir. 1994)(Paoli II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Powell v. McCormack,* 395 U.S. 486 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rogin v. Bensalem Township,* 616 F.2d 680 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . 3

*Simon v. Eastern Ky. Welfare Rights Organization,*

426 *U.S. 26, n.20* (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*United States v. Downing,* 753 F.2d 1224  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

*United States Parole Commission v. Geraghty,* 445 U.S. (1980)  . . . . . . . . . . . . . . . . .  2

*W.B. v. Matula,* 67 F.3d 484 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## UNITED STATES CONSTITUTION

U.S. CONST. Article III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 22

## STATUTES and REGULATIONS

20 U.S.C. §1412  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5, 6

U.S.C. § 1414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

29 U.S.C § 794 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

34 C.F.R. §§300.128, 300.220 and 300.300  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

34 C.F.R. §§104.33(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## RULES OF EVIDENCE

Federal Rules of Evidence 702  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18, 20

Federal Rules of Evidence 703  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 20

## STATEMENT OF THE CASE

Plaintiffs are students with disabilities and state-wide and regional organizations organized to advocate and lobby on behalf of disabled persons. Originally, there were twelve students named who sought broad-based injunctive relief for themselves and on behalf of a state-wide class of students in Pennsylvania who were eligible to receive special education services. Of the twelve, one plaintiff has died, one has relocated with her parents to Colorado and five others are twenty-one years of age or older and so are outside the age category for obtaining services under the IDEA. There are only five students remaining from the original group who would be entitled to benefit from the injunction sought in this lawsuit.

Defendants are the Pennsylvania Department of Education("PDE"), the PDE Secretary, and other state education employees.

Plaintiffs have asserted that the defendants have deprived them of a free appropriate education in the least restrictive environment and have discriminated against them because of their disabilities in violation of the Individuals With Disabilities Act ("IDEA"), the Americans With Disabilities Act (ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Plaintiffs seek not only injunctive relief which specifically addresses their individual needs, but also an order directing PDE to undertake a comprehensive training program of all its teachers, produce procedures for the production of monitoring reports, and submit plans for court approval that will specify the training, monitoring and enforcement activities it will undertake to correct the deficiencies plaintiffs say exist.

After years of discovery, both sides have moved for summary judgment. Defendants moved for partial summary judgment on plaintiffs' claims premised upon the ADA and on all the class' claims to which plaintiff have responded. Plaintiffs moved for summary judgment in their

favor on all their claims.  This is their brief opposing plaintiffs' motion.

Defendants have organized this brief in two main sections: one discussing the individual claims and why those plaintiffs are not entitled to summary judgment; and the other which focuses upon the class claims and discusses why defendants are entitled to summary judgment in their favor on all those claims.  The discussion follows under those two headings below.

## ARGUMENT

### I.   THE INDIVIDUAL PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF THEIR CLAIMS.

Defendants agree with plaintiffs' statement of the standards for summary judgment and will not repeat them here.  As may be seen from defendants' extensive answer to plaintiffs' 577 plus paragraph statement of undisputed facts, however, there are indeed genuine issues of material fact which preclude the grant of summary judgment in favor of any of the individual plaintiffs.

### A.   The Claims of Plaintiffs Merrin Rainey, John Forte and Michael Wintering Are Moot

Federal court jurisdiction is prescribed by Article III of the United States Constitution.  *See* U.S. CONST. Art. III, § 2, cl. 1.  Article III of the Constitution limits federal "judicial power" to "cases" and "Controversies."  *United States Parole Commission v. Geraghty*, 445 U.S. (1980).  This case-or controversy limitation serves "two complementary" purposes.  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  It limits the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial

process," and it defines the "role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Ibid.*

Likewise, mootness has two aspects: when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). A case may become moot if it can be said with assurance that there is no reasonable expectation requires that the alleged violation will recur and when interim relief have eradicated the effects of the alleged violation. *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979). Because the mootness issue implicates federal court jurisdiction, *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 90 (1988), the court must address it as a threshold matter. *Rogin v. Bensalem Township,* 616 F.2d 680, 684 (3d Cir. 1980).

In the complaint, plaintiffs seek injunctive relief only pursuant to the ADA, Section 504 of the Rehabilitation Act of 1973 and the IDEA. *See* Complaint, Relief Section, ¶¶ 1-12. The death of a party seeking injunctive relief moots her claims. *Harrow v. Prudential Insurance Company of America,* 279 F.3d 244 (3d Cir. 2002). According to her counsel, Plaintiff Merrin Rainey died in May of 2003. *See* Plaintiffs' Fact No. 94. Her death moots her claims.

The parents of John Forte sought compensatory relief for him the injuries they claimed resulted from the failure of the Bensalem School District to provide special education services to him during his enrollment in the district by way of an administrative due process hearing. *See* Declaration of Kathy Makransky, ¶¶ 10-11. They prevailed and were awarded compensatory relief in form of money. *See id.* This award mooted John's claims for injunctive relief sought in this lawsuit.

According to plaintiffs' counsel, the parents of Michael Wintering also sought and obtained relief for him for the educational deprivations he claimed for summer of 1998 and the 1998-99 school year by way of an administrative due process hearing. *See* Plaintiffs' Fact No. 141. They prevailed and the family was awarded compensatory education for Michael and tuition reimbursement. *See id.* Michael's claims for relief in this lawsuit are likewise mooted by these awards.

Because Merrin Rainey's death mooted her claims and the interim relief awarded to John Forte and to Michael Wintering mooted their claims, this court lacks jurisdiction over them. Their claims should therefore be dismissed.

**B.    Plaintiff Tiffany Zimenoff's Move From Pennsylvania Deprived Defendants From Responsibility For Her Education Under The IDEA.**

Under the IDEA, states are required to provide "a free appropriate public education... for all children with disabilities... within the State..." 20 U.S.C. §1412(2)(C).[1] The only reasonable interpretation of this clear language is that Congress intended the states to ensure special education and related services only to the children who reside within their territorial boundaries. *See Gadsby by Gadsby v. Grasmick,* 109 F.3d 940, 952 (4th Cir. 1997)(state educational agency has responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education). The corollary to that fact is that states have no responsibility under the IDEA to provide a free appropriate education to children who reside outside their jurisdiction.

---

[1] Section 1412(2)(C) requires states to demonstrate that "all children residing in the state who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and evaluated." 20 U.S.C. §1412(2)(C); 20 U.S.C. § 1414(a)(1)(A); 34 C.F.R. §§300.128(a)(1) and note 1, 300.220 and note, 300.300 note 3. This is known as the "child find" duty.

4

It is undisputed that Plaintiff Tiffany Zimenoff no longer resides In Pennsylvania. According to plaintiffs' counsel, Tiffany moved with her mother to Colorado in December of 1995, and has resided there since that time. *See* Plaintiffs' Fact No. 212. It is established that her former school district in Pennsylvania, the Neshaminy School District, offered Tiffany a free appropriate public education in the least restrictive environment appropriate to her needs while she resided in the district and would have afforded her the same had she remained in the district. *See* Declaration of William Krayger, ¶¶ 5, 9. Because Tiffany no longer resides within Pennsylvania and there is no evidence that her move from the state was the result of the state's refusal to educate her, the Department of Education has no responsibility under the IDEA for providing special education services to her. The court should not grant summary judgment in her favor on the IDEA claims.

> **C.   Because John Forte, Samuel Luckenbill, Sarah Noe, Hassan Sabree, Michael Wintering And Tiffany Zimenoff Are Over The Age Of 21, They Have No Right To Seek Injunctive Relief Under The IDEA.**

It is settled that §1412(2)(B) of the IDEA requires a state "to provide a 'free appropriate education' to every disabled child." *Board of Education of E. Windsor Regional School District v. Diamond,* 808 F.2d 987, 991 (3d Cir. 1986). However, the IDEA limits eligibility for benefits to disabled children between the ages of three and twenty-one. 20 U.S.C. §1412(2)(B).

Plaintiffs have asked the Court to direct the defendants to comply with the IDEA now and to take certain actions they believe will ensure that compliance in the future. *See* Complaint, Relief Section, ¶¶ 1-12. However, John Forte, Samuel Luckenbill, Sarah Noe, Hassan Sabree,

5

Michael Wintering and Tiffany Zimenoff[2] are all over the age of twenty-one and so no longer have the right to injunctive relief under the IDEA. *See, Lester H. Gilhool,* 916 F.2d 865, 872 (3d. Cir. 1990)(someone over age 21 has no right to demand compliance with the IDEA either presently or in the future). These plaintiffs are limited to seeking compensation for any violations of the IDEA by the defendants which they can demonstrate occurred while they were still entitled to them. *Lester H.,* 916 F.2d at 872.

The claims under the IDEA for injunctive relief of John Forte, Samuel Luckenbill, Sarah Noe, Merrin Rainey, Hassan Sabree, Michael Wintering and Tiffany Zimenoff having been extinguished when they reached twenty-one, the Court cannot grant summary judgment in their favor on these claims.

> **D.    Plaintiffs Samuel Luckenbill, Sarah Noe And Hassan Sabree Have Not Shown That They Are Entitled To Compensatory Education.**

The IDEA requires school districts to provide disabled children with free, appropriate education ("FAPE") until they reach the age of twenty-one. *See* 20 U.S.C. §1412(2)(B). Compensatory education is available to students beyond age twenty-one who establish a violation of their rights under the IDEA before they turned twenty-one. *Lester H. Gilhool,* 916 F.2d 865, 872 (3d cir. 1990), *cert. denied,* 499 U.S. 923 (1991).

As we have shown, plaintiffs Samuel Luckenbill, Sarah Noe and Hassan Sabree are all over the age of twenty-one and so cannot assert a claim for injunctive relief under the IDEA. *See*

---

[2] As we have said, Plaintiff Tiffany Zimenoff moved to Colorado and so is no longer entitled to received special education services provided by the State of Pennsylvania. *See* Argument B, *supra.* at pp. 4-5. Had she remained, she would not be entitled to injunctive relief either because she is over 21 years of age. *See* Declaration of Valerie Caggiano at ¶ 8.

Argument heading C, *supra.* at pp. 5-6.  Therefore, the only relief that these three plaintiffs can

obtain upon a showing of actual injury is compensable education.  However, the record in this

case does not establish their claim for that relief.

### Samuel Luckenbill

Plaintiff Samuel Luckenbill was born on February 11, 1980, and turned twenty-one on

February 11, 2000.  *See* Declaration of Valerie Caggiano at ¶ 8.  It is alleged that Samuel was

gifted student who was identified as having severe learning disabilities and attention deficit

disorder.  Plaintiffs' Fact. No. 95.  Samuel claimed that his teachers at the Conrad Weiser Area

School District failed to provide him with specialized instruction and other supplementary aids

and services in the regular class while he was enrolled there.  He seeks relief from the defendants

for PDE's alleged failure to ensure that he received FAPE.

The record shows that Samuel's parents unilaterally removed him from public school

when he was in the eighth grade and enrolled him in the Upattinas Educational Resource Center

which he attended from school years 1994-1995 through 1996-1997.  Plaintiffs' Fact No. 105.

Samuel left high school without graduating.  Plaintiffs' Fact No. 105.  After high school, Samuel

attended Reading Area Community College and Burlington College in Vermont but did not

graduate from either college.  Neither students nor their parents may obtain reimbursement for

the time they spent in private school without the permission of the school district absent a

showing that the program offered by the school district did not meet the requirements of the

IDEA.  *See e.g. Fort Zumwalt v. Clynes,* 199 F.3d 607,614 (8th Cir. 1997), *cert. denied,* 523 U.S.

1137 (1998).  Samuel has made no such showing here.  The record shows that the Conrad Weiser

area School District had available for Samuel a free appropriate education in the least restrictive

7

environment had his parents elected to have him remain enrolled in the district. *See* Declaration of Robert C. Reese at ¶ 10. Moreover, Plaintiffs have not provided any evidence showing that any of the injuries Samuel says he suffered while he was enrolled at the Conrad Weiser Area School District resulted from the actions or inactions of PDE. Plaintiffs are not entitled to summary judgment on Samuel Luckenbill's claims.

### Sarah Noe

Plaintiff Sarah Noe was born on December 22, 1981, and turned twenty-one on December 22, 2001. *See* Declaration of Valerie Caggiano at ¶ 8. Sarah attended the Neshaminy School District at the time that the complaint was filed in 1994 and was identified with Down Syndrome. Plaintiffs' Fact No. 191. Sarah alleged, *inter alia,* that the Neshaminy School District did not adequately prepare for her transition into middle school, assigned special education teachers to work with her who were inadequately trained and prepared, and did not always implement her IEP. Plaintiffs' Fact Nos. 195, 196, 197. Plaintiffs have not articulated why they believe that PDE is implicated by these alleged deficiencies on the part of the Neshaminy School District.

As with Samuel Luckenbill, plaintiffs have not met their burden for obtaining compensatory relief. Sarah's claims that she was not afforded FAPE, was not provided the programs prescribed in her IEPs and was subject to inadequately trained and prepared special education teachers while at the Neshaminy School District are disputed. *See* Declaration of Patrick Romano at ¶¶ 5-7. The record shows that Sarah remained in the Neshaminy School District through high school until she reached the age of eighteen at which time her parents enrolled her in a vocational training program at the Bucks County Technical High School. *See* Declaration of Patrick Romano at ¶ 8; Declaration of Kelly Lambert at ¶¶ 2-4. Sarah was given

special education services at the Bucks County Technical High School for three years until her graduation in June of 2003. Declaration of Kelly Lambert at 5. Sarah was afforded a free appropriate education in the least restrictive environment appropriate to her needs while attending the Bucks County Technical High School. *Id.* Because no basis was presented by the plaintiffs to support a claim for compensatory education for Sarah Noe, their claim for summary judgement must be denied.

### Hassan Sabree

Hassan Sabree was born on November 30, 1979, and is now twenty-three years of age. *See* Declaration of Valerie Caggiano at ¶ 8. Hassan attended the Roxborough High School in Philadelphia and was identified with Down Syndrome. *See* Plaintiffs' Fact No. 69. It was alleged that the Philadelphia School District "never offered [Hassan] the opportunity to be a member of a classroom with disabled students" and was never taught to read, write, count, to do math, or to participate in extracurricular activities. Plaintiffs' Fact No. 70. Plaintiffs seek relief from the defendants for PDE's failure to ensure that the Philadelphia School District provide Hassan a comprehensive transition plan. Plaintiffs' Fact No. 80.

The record contains facts which dispute most of Hassan's claims. *See* Report of Dr. Keith Turner at pp. 10-14. More important, the report of plaintiffs' own expert, Dr. Petroff, disputes plaintiffs' claim that PDE was implicated in the failure of the Philadelphia School District to provide the transition services he says has cause him harm. *See* Plaintiff's Exh. 62: Petroff Report at p. 6. Summary judgment in favor of Hassan Sabree is also inappropriate based on the facts in the record.

**E.    Plaintiffs Anne Corr, Lydia Gaskin, Brett Koneski,
       Lisa McCann And Elizabeth Moser Are Not
       Entitled To Injunctive Relief.**

As we have said, at the commencement of this lawsuit, there were twelve individual

students with disabilities who sought class-wide injunctive relief on behalf of themselves and

unnamed similarly situated students throughout the Commonwealth. Of the twelve individual

student representatives, only five remain who have standing to request injunctive relief. Not one

of the five has presented evidence sufficient to demonstrate that he is entitled to summary

judgment on his claim for injunctive relief. The claims of each of the five is detailed below.

**Anne Corr**

Anne Corr is nearly twenty years old and is autistic. When this action was filed, Anne

attended the North Hills School District. Plaintiffs' Fact No. Fact 181. According to an

evaluation report completed in November of 1995, Anne was described as a student who "does

not speak, but communicates with facilitated communication, yes and no gestures and signs."

Plaintiffs' Fact No. 181. The report also stated that "[a]t times, Anne also exhibits challenging

behavior when she becomes frustrated." *Id.*

Anne's parents sought to have her educated in regular classes with supplementary aids

and services. In 1993, before this lawsuit was filed, an IEP was developed for Anne which was

consistent with their wishes. Plaintiffs' Fact no.183. However, Anne's parents challenged the

manner in which the North Hills School District implemented her IEP. *Id.* at 183-185.

The School District eventually changed Anne's placement from a regular classroom to the

Life Skills classroom which was opposed by her parents. Plaintiffs' Fact No. 188. The School

District next sought to change Anne's placement from one in her home district to a more

10

restrictive one which decision was challenged by the Corr's but was upheld by the Third Circuit. Plaintiffs' Fact No. 190. Following the decision of the Third Circuit, the Corrs' unilaterally withdrew Anne from public school and home schooled her until she reached eighteen years of age. Id. It is not clear how the plaintiffs fault the defendants in this course of events or why they believe that PDE was responsible in the decision-making that resulted in Anne's withdrawal from public school.

In light of plaintiffs' own evidence that the last special education program proposed by Anne's School District was approved on appeal by the Third Circuit and that her parents unilaterally withdrew Anne from public school thereby preventing the school district to implement what was judicially to be an appropriate program for Anne, plaintiffs have no viable claim for injunctive relief against the defendants. Plaintiffs' motion for summary judgment must be denied as to Anne Corr.

### Lydia Gaskin

Plaintiff Lydia Gaskin is a ten year old student who attends the Carlisle Area High School. "Lydia has retardation, low muscle tone and difficulties with fine motor control and coordination." Plaintiffs' Fact No. 39. Some time after this lawsuit was filed, Lydia's parents succeeded in obtaining some inclusion for Lydia in a regular class with supplementary aids and services through the IEP process. Plaintiffs' Fact No. 46. Lydia has been included for all but one hour per day since first grade. The Gaskins' are not entirely satisfied with the implementation of Lydia's special education program by the Carlisle Area School District. The Gaskins complain that Lydia has been denied FAPE "by the condescending attitude of her teachers". Plaintiffs' Fact No. 54. They also complain that the School District has failed to obtain technical assistance

11

which they believe is needed to facilitate her inclusion in the regular class. Apparently, plaintiffs believe that PDE had violated its responsibilities under the IDEA by failing to compel the School District to seek and obtain training or technical assistance consistent with the Gaskins' wishes.

The record does not support plaintiffs' claim for summary judgment on Lydia Gaskin's behalf. While plaintiffs provided much evidence of the Gaskins' dissatisfaction with the School District's performance in the speed and manner in which it delivered special education services, they presented no evidence at all which shows that the District violated the IDEA of that Lydia has suffered any harm from what the District did. In fact, the record demonstrates, at most, an ongoing disagreement between Lydia's parents and the Carlisle Area School District over Lydia's educational needs and the best way to serve those needs. *See e.g* Plaintiffs' Fact No. 52; Declaration of Mary Benton at ¶¶ 3-9 ; Declaration of Dr. Keith Turner at ¶¶ 3-9; Report of Dr. Keith Turner at pp 27-28. The legal standards governing summary judgment require more. The court should deny plaintiffs' motion for summary judgment on Lydia Gaskin's claims.

**Brett Koneski**

Plaintiff Brett Koneski is a sixteen year old who has Down Syndrome and is moderately retarded. Plaintiffs' Fact No. 109; Declaration of Michael Koury at ¶5. Brett began school at the Kistler Elementary School in the Wilkes-Barre Area School District in September of 1993. The Koneski's challenged the occasional use of the 4-point restraint method on Brett and complained that there was a lack of speech and occupational therapy at Kistler. The Koneski's also believed that Brett's teacher failed to adapt assignments and implement Brett's IEP in the regular classroom. Plaintiffs charge that PDE violated IDEA by failing to provide technical assistance to staff at the Kistler Elementary School.

12

The Koneski's transferred Brett to the Dan Flood Elementary School in the Wilkes-Barre School District after an incident at Kistler when Brett removed his clothing and walked around naked. The Koneski's complain that there have been delays in the provision of therapy to Brett at Dan Flood and that some therapies he needed were not available.

Plaintiffs' claims concerning the deficiencies in Brett's special education programming are not undisputed. Specifically, it is disputed that Kistler's use of 4-point restraints was improper; that Brett was denied necessary therapy, supports, supplementary aids and services; that Brett's teachers were not adequately trained; or that Brett's IEP was not implemented as required by law. *See* Declaration of Michael Koury at ¶¶ 7-19.

In light of the disputed material facts in this case, plaintiffs' summary judgment motion on Brett Koneski's claims should be denied.

### Lisa McCann

Plaintiff Lisa McCann is a nineteen year old student enrolled in the Cocalico School District. Lisa is mentally retarded and sometimes displays "challenging" behaviors. Plaintiffs' Fact No.143. Plaintiffs have alleged, *inter alia,* that the District denied Lisa social benefits by refusing to educate her in her home district; limited her therapies, assigned her teachers who lacked adequate training and inappropriately promoted her to the third grade to ensure the failure of her inclusion. They also complain that the Cocalico School District and Intermediate Unit 13 failed both to provide Lisa an appropriate program of positive behavior management and to train staff on behavior modification techniques.

Defendants dispute these claims. *See* Declaration of Dr. William R. Worley at ¶¶ 6-31; Declaration of Patrice L. Smedley at ¶¶5-11. The grant of summary judgment on Lisa McCann's

claims would be improper.

### Elizabeth Moser Royer

Plaintiff Elizabeth Royer will turn seventeen years of age in November of 2003. Elizabeth, or "Beth" as she is most commonly called, has Down Syndrome and attends school in the Cornwall-Lebanon School District. Plaintiffs' Fact No.159. Plaintiffs complain that the District's failure early on to fully include Beth in a regular classroom, her academic skills did not develop as they should have. Plaintiffs claim that the District has refused to provide behavioral support and integrated speech therapy and that PDE has failed to ensure that Beth receives the adaptive testing and speech and language services she needs. They also complained that PDE has failed to ensure that the instructional and support staff are properly trained.

The principal at the elementary school that Beth attended and a special education teacher who serves as Beth's case manager dispute plaintiffs' claims. They say that Beth's teachers and the other staff are adequately trained and that Beth has been afforded FAPE in the least restrictive environment to the maximum extent appropriate to her needs. *See* Declaration of Linda Toth at ¶¶ 5-16; Declaration of Denise Thomas at ¶¶ 4-11. Plaintiffs are not entitled to summary judgement on the claims of Elizabeth (Beth) Royer either.

### F.    Plaintiffs Have Not Demonstrated Their Entitlement To Relief Under Section 504.

While the IDEA is phrased in terms of a state's affirmative duty to provide a free, appropriate education, the Rehabilitation Act is worded as a negative prohibition against disability discrimination in federally funded programs. Section 504 provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, soley by reason of her or his disability, be excluded from

14

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...

29 U.S.C §794(a) Courts recognize few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition. *W.B. v. Matula,* 67 F.3d 484,493 (3d cir. 1995). Indeed, the regulations implementing § 504 adopt the IDEA language, requiring that school which receive or benefit from federal financial assistance "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction." 34 C.F.R § 104.33(a).

To establish a violation of § 504, plaintiffs must demonstrate that they are disabled as defined by the Act; that they are "otherwise qualified" to participate in school activities; that the school or other entity receives federal financial assistance; and that they were excluded from participation in, denied the benefits of, or subject to discrimination at school. *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d Cir. 1991).

Plaintiffs have included § 504 as a basis for the injunctive relief they are requesting. While defendants might be willing to concede that some, if not all of the individual plaintiffs might be able to demonstrate that they satisfy the first three prongs of the test under § 504, they have not and cannot show that they satisfy the last prong for the same reasons given in response to their claims for IDEA relief. The record is replete with disputed facts on the issue of whether plaintiffs were subject to conduct considered illegal under § 504 which preclude the grant of summary judgment on this claim.

### G.   Plaintiffs Have Not Demonstrated That They Are Entitled To Relief Under The ADA.

Plaintiffs also cited the ADA as a basis for injunctive relief against the defendants. As defendants argued in their opening brief, insofar as plaintiffs are seeking to base their claims for

relief upon Title II of the ADA, those claims are barred.  Defendants continue to rely upon those arguments and the authorities that are cited and discussed in that brief.

In their opposing brief, however, plaintiffs maintain that Title II of the ADA contains a clear and unequivocal expression of Congress' intent to abrogate the states' eleventh amendment authority and so press their claims even in the face of direct authority in other circuits which have held to the contrary.

Should this court be persuaded that the eleventh amendment does not bar claims based upon Title II of the ADA, or alternatively conclude that the eleventh amendment bars only claims against the states and not against state officials, defendants submit that the individual plaintiffs are in no event entitled to summary judgment on these claims because facts necessary to the determination of liability are in dispute.  Plaintiffs' motion for summary judgment on the ADA should also be denied.

## II.    PLAINTIFFS ARE NOT ENTITLED TO CLASS-WIDE RELIEF

### A.    The Survey Data Is Inadmissible Under Rule 702 And *Daubert*

In the opening brief in support of their motion for partial summary judgment, defendants argued that they are entitled to judgment in their favor on plaintiffs' claims for class-wide relief because the survey on which they rely to show injury is inadmissible.  Defendants argued that the data in the plaintiffs' expert report is flawed because of the methodological errors committed by the authors of the report.

Plaintiffs in their opposing brief disagree.  They seem to say that the expert report and the data upon which it is based constitute admissible evidence because they experienced substantial

difficulties in conducting the study. They also argue that the data are admissible because it satisfies Rules of Evidence 702 and 703; because the defendants failed to follow the procedure required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993), for challenging expert evidence; and because defendants failed to prove that the survey results are unreliable. Defendants will discuss each of plaintiffs' points in turn.

Plaintiffs go on at great length in their brief cataloguing the obstacles that they met in obtaining the data for their survey and in implementing the survey. They complain, *inter alia,* that they had to use third-party discovery to obtain information from the school districts, some of the school districts resisted their efforts to obtain the requested information, the project proved costly and the data they received from the Commonwealth was not of the quality they had hoped for. However, they failed to present a single authority which excuses the proponent of evidence from establishing the admissibility of the information they seek to admit as evidence because he experienced difficulty or even opposition in obtaining it. The difficulties experienced by the plaintiffs and their experts in conducting the study which was to be used as evidence in this case, though no doubt trying, provide no information that is helpful or even relevant in the Court's consideration of the admissibility of expert evidence. Plaintiffs' expert report and the survey evidence upon which it is based are no more or less admissible because the information which is their subject was hard to obtain. This first argument in favor of admitting the expert report and survey data is without merit.

Plaintiffs say that the report of their experts Evans and Lengyel is admissible because it satisfies Rule of evidence 702. This argument also misses the mark.

Federal Rule of Evidence 702 states:

17

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> to understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto
> in the form of an opinion or otherwise.

Fed. R. Evid. 702. The Third Circuit, in the wake of the Supreme Court's decision in *Daubert*

concluded that Rule 702 has two requirements: "qualifications" and "reliability". *In re Paoli*

*Railroad Yard PCB Litigation,* 35 F.3d 717, 741-742 (3d Cir. 1994)(Paoli II). The Court said

that an expert's qualifications are to be interpreted liberally. In discussing reliability, the Court

listed the factors set forth in *Daubert* but noted that its decision in *United States v. Downing,* 753

F.2d 1224 (3rd Cir. 1985), continued to have vitality. It held that a district court should take

account of the following factors which are relevant under both *Daubert* and *Downing:* whether a

method consist of a testable hypothesis; whether the method has been subjected to peer review;

the known or potential rate of error; the existence and maintenance of standards controlling the

technique's operation; whether the method is generally accepted; the relationship of the

technique to methods which have been established to be reliable; the qualifications of the expert

testifying based on the methodology; and the non-judicial uses to which the method has been put.

Paoli II, 35 F.3d at 742 n. 8. *Daubert* applies not only to testimony based upon scientific

knowledge, but to testimony based on technical or other specialized knowledge as well. *See*

*Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137, 141 (1999).

    While plaintiffs claimed in their brief that their expert report and the opinions of their

experts based on that report satisfy Rule 702, they presented no discussion providing the reasons

for that claim. The fact is, there are none. Plaintiffs' expert, Dr. Beverley Evans, who with Dr.

Linda Lengyel conducted the survey and wrote the report, testified that it was their intention in

doing the survey to obtain information that would hold true not just for those who were part of

the study, but for the entire population of special education students in the class. *See*

Defendants' Exh. 19: Evans Depos. at 31. However, when questioned about the sampling

principles and techniques used in choosing the ten school districts which were included in the

study, Dr. Evans testified that "[she] had no involvement in that, other talking with Jim Conroy

about stratifying the instrument or stratifying the population." *See, id.* at 32. She did not know

who selected the person who would do the sampling, who determined the number of school

districts to be included in the sample, and could not provide information concerning the

accuracy, reliability or standard deviation of the sample that was chosen and observed by her and

her partner, Dr. Lengyel. *See, id.* at 34-41. Clearly, Dr. Evans knew next to nothing about the

methodology employed in arriving at the sample population and could not explain what if any

effect their reliance upon a smaller number of "subjects" had on the accuracy of the study results.

Applying only a few of the *Daubert* and *Downing* factors to the testimony of Dr. Evans shows

that neither the report nor the opinions in that report satisfies the standards of Rule 702.

Nor can the information plaintiffs supplied in the declaration of Dr. James Conroy cure

the defects in the Evans/Lengyel report. The report on the survey identified Dr. Conroy[3] as the

person who had designed the ten school district sample; he had no role in the conduct of the

survey. While Dr. Conroy challenged the comments and conclusions of defendants' expert, Dr.

Naomi Zigmond, regarding the design of the sample, he steered clear of addressing or even

acknowledging the testimony of plaintiffs' expert who admitted that she had failed to implement

---

[3]Plaintiffs did not identify Dr. Conroy as one of their experts; therefore, the defendants
did not have an opportunity to depose him despite the extensive discovery period.

19

the sampling in the manner in which it had been designed.  The main thrust of the Conroy

declaration was at defending the validity of his original design:

> "Therefore the claim that the sampling designed and performed for the
> Gaskin discovery is worthless and without validity is wrong.
> The sample:   Was designed to be representative
>                    Also to be fair and unbiased
>                    Followed established techniques
>                    That are well known in the literature
>                    And that are commonly used in large scale
>                    Research and political polling."

Missing from the declaration was any discussion by Dr. Conroy based upon accepted

professional standards of the impact of observing and surveying smaller numbers of the original

sample than had been proposed.  Absent this information, the comments he provided in his

declaration add nothing to the issues to be resolved under Rule 702.

On the subject of Rule of Evidence 703, plaintiffs argue that an expert may testify based

on otherwise inadmissible hearsay evidence provided the evidence is the kind reasonable relied

upon by experts in the field.  Because plaintiffs did not explain why they believe that their survey

evidence or their experts' opinions concerning that evidence comes within the scope of Rule 703,

defendants are unable to address this argument at this time.

Plaintiffs fare no better with their argument that defendants' failure to invoke Rule 702 or

the procedures described in *Daubert* in specific terms in their opening brief somehow precludes

their challenge to the admissibility of the expert evidence provided by Evans and Lengyel.

Again, the Third Circuit provides guidance.  In *Oddi v. Ford Motor Company*, 234 F.3d 136 (3d

Cir. 2000), the injured plaintiff challenged the district court's grant of summary judgment in the

defendants' favor without resort to a *Daubert* hearing.  The plaintiff argued that some sort of

hearing was required before the court could make a determination concerning the sufficiency or admissibility of the evidence of his experts. The Third Circuit said no. The Court explained that even after *Daubert* , trial courts retain a significant amount of discretion to determine in each instance the procedures by which to make preliminary decision about the admissibility of evidence. *See Downing*, 753 F.2d at 1241. The Court went on to say that it would not prescribe any mandatory procedures that district courts must follow in every case involving proffers of expert evidence. *Id.* The Court said that a review of deposition transcripts and affidavits of the parties' experts in the context of a summary judgment motion could suffice to afford the district court a basis for determining whether proffered evidence should be admitted. *Oddi*, 234 F.3d at 154. Thus, this Court can certainly consider the admissibility of the parties' summary judgment motions without resort to an evidentiary hearing should it deem it appropriate to do so.

As for plaintiffs' argument that defendants failed to show that the results obtained by their experts are unreliable, it is foreclosed by precedent and, more important, by the testimony of their own expert. The Supreme Court in *Daubert* said that it is the proponent of the expert evidence which has the burden of satisfying the requirements for its admissibility by a preponderance of the evidence, and not the other way around. *Daubert,* 509 U.S. at 592-93. In any event, defendants in their initial brief offered the deposition testimony of Dr. Evans in which she admitted that the randomness was compromised, the sample was compromised, and the generalizability was compromised. *See* Defendants' Exh 19: Evans Deps. at 47-48. Defendants can think of no stronger evidence of the unreliability of the Evans and Lengyel report and the study on which it is based than that.

Plaintiffs' arguments in favor of admitting the report of Drs. Evans and Lengyel or their

21

opinion based on that report should be rejected.

**B.    There Is No Proof That The Class Suffered
Actual Injury**

Even if this Court decides that the expert report of Dr. Evans and Lengyel based upon information obtained from the survey and observation of school administrators, teachers, students and parents from a ten school district sample is admissible as proof of injury in this case, plaintiffs cannot establish their entitlement to class-based relief. This is so because they have no evidence which establishes that the class members suffered actual injury as a result of actions taken by the defendants.

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court observed that the success of a class representative's systemic challenge was dependent on his ability to show widespread actual injury. This is so because of Article III's actual injury requirement for the invocation of federal court jurisdiction. *See* U.S. CONST. art. III, §2 cl. 1. The Court has instructed on numerous occasions that the remedy must be limited to the inadequacy that produced the injury that the plaintiff has proven. *See e.g. Missouri v. Jenkins,* 515 U.S. 70, 88, 89 (1995)("[T]he nature of the... remedy is to be determined by the nature and scope of the constitutional violation." The Court has pointed out that this is as true for class actions as it is for individual suits. "That a suit may be a class action... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40, n.*20 (1975).

What this means is that in order for the plaintiffs to obtain the broad-based remedies they have sought in the complaint and described in their motion for summary judgment, they must present proof not just of their own actual injury but also of the actual injuries of the class members as well.  Defendants submit that plaintiffs have not done this in the context of their motion for summary judgment and cannot do so should the Court allow them to proceed to trial. Consideration of the materials plaintiffs' submitted in support of their motion, though voluminous, does not reveal evidence showing that the class suffered actual injury.

In their brief opposing defendants' motion for partial summary judgment, plaintiffs say that the "denial of students' and parents' rights under the IDEA constitute[sic] 'actual injury'". This is wrong. *Lewis v. Casey* instructs that a claim of a violation of the IDEA, like the any other federal statute or constitutional provision, requires proof not just of some wrongdoing but also evidence that someone within the federal provision's zone of protection actually suffered harm. 518 U.S. at 357.  Moreover, once proof has been adduced which shows that some actual injury resulted from an inadequacy, the next inquiry must be whether that violation was widespread enough to justify system-wide relief.

Plaintiffs point to the expert report of Drs. Evans and Lengyel as support for their claim of class-wide relief.  Assuming arguendo that the report is admissible evidence of the actual injuries suffered by those who were included in the ten school district sample, it still cannot be said that the evidence justifies system-wide relief.  There are 501 school districts in the Commonwealth.  Proof that the disabled children in ten of the 501 school districts suffered harm is not a sufficient basis for granting relief to those children in the other 491 school districts across the entire state.

23

Plaintiffs also say that the written reports prepared by employees of the Department of Education who "shadowed" plaintiffs' observers' which detailed their own observations constitute evidence of class-wide harm. However, again assuming that those reports are properly considered admissible evidence under some rule-- which defendants maintain they are not-- the limitation of that argument matches the limitation of the argument concerning the Evans/Lengyel report. The reports of the PDE "shadows" relate only to students in the ten school district sample and could be used to show, at most, injury suffered only by those in that sample. The shadows' reports would not justify class-wide relief either.

Nor can plaintiffs rely upon the OSEP findings of noncompliance issued to Pennsylvania to show actual injury to the class. The findings relate to alleged deficiencies in the Commonwealth's performance of oversight functions which, if they existed, existed in the past; were corrected by PDE and the corrections were accepted by OSEP; and like the Evans/Lengyel report and the reports of PDE's "shadows" observations, concerned only those problems found in a limited sample of cases. Again, such evidence would not support the grant of class-wide relief.

For all these reasons, defendants' motion for summary judgment on plaintiffs' claims for class-wide relief should be granted.

24

## CONCLUSION

For the foregoing reasons, defendants ask the Court to deny plaintiffs' motion for summary judgment and grant their motion on plaintiffs' claims based upon the ADA and on all the class' claims.

Respectfully submitted,
**D. MICHAEL FISHER**
**Attorney General**

By: _____
**GWENDOLYN T. MOSLEY**
**Senior Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**OFFICE OF ATTORNEY GENERAL**
**15th Floor, Strawberry Square**
**Harrisburg, PA  17120**
**717-787-1180**

**DATE:**          **September 26, 2003**

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYDIA REBECCA GASKIN,<br>et al., | : | |
| | : | NO. 94-CV-4048 |
| | : | |
| Plaintiffs | : | (JUDGE ROBRENO) |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, et al., | : | |
| | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, **Gwendolyn T. Mosley**, Senior Deputy Attorney General for the Commonwealth of

Pennsylvania, hereby certify that on **September 26, 2003**, I served a true and correct copy of the

foregoing **Defendants' Brief In Opposition to Plaintiffs' Motion for Summary Judgment**

**and in Support of Their Motion for Partial Summary Judgment**, by depositing a copy of it in

the United States mail, first-class postage prepaid, in Harrisburg, PA., addressed to the following:

> **Judith Gran, Esquire**
> **Public Interest Law Center of Philadelphia**
> **125 S Ninth Street, Suite 700**
> **Philadelphia, PA 19107**

GWENDOLYN T. MOSLEY